23-1507, 23-1551, Jason Schwebke v. United Wholesale Mortgage LLC. Oral argument not to exceed 15 minutes per side. Mr. Nelson for the Defendant Appellant. Good morning. Good morning, Your Honors. Matthew Nelson on behalf of United Wholesale Mortgage and I'd like to reserve three minutes for rebuttal. Very well. Thank you, Your Honors. This is your intermission and your insurance court argument. I guess so. I wish I could say that it was a sort of entertaining intermission. I'm not sure. You're learning a lot of insurance law today. Maybe you're not, but hopefully you are. Your Honors, waiver is well known as the voluntary and intentional relinquishment of a known right. And to demonstrate the waiver of an arbitration agreement, this court has required the party opposing arbitration to demonstrate that the other party acted in a manner that is completely inconsistent with any reliance on the arbitration agreement. Consistent with general contract principles with regard to waiver of a substantial right under a contract, there's two ways to demonstrate this complete inconsistency. One is by direct evidence as to a statement by counsel or statements by a party saying we're not going to arbitrate. I think you could also probably lump in there filing an action where there's an arbitration agreement. The other is through indirect evidence. And generally that involves, in the mine run of cases, affirmatively seeking a judicial determination or waiting, even worse, until after an adverse determination before asserting the arbitration. What about, didn't you seek or issue subpoenas for witnesses? Yes, Your Honor, we would agree, we would concede that that does invoke the power of the court. But it's not a process that seeks a judicial determination or requires, frankly, the court's involvement. And so what you have, especially in an employment case, is a sort of run-of-the-mill discovery that happens. You seek records releases from the plaintiff and then you submit subpoenas for those records to previous employers and educational institutions. Here we also had a sign language interpreter because of the particular issues in the case. So that is the, and I think when you read the district court's decision, that's essentially where the crux of this lies. So you have the mine run of cases where you have affirmative efforts to obtain a judicial determination. You have sort of the low-water mark in terms of where this court's jurisprudence has held that there is a waiver in Johnson & Associates. And then you have our case, which is a step below that. In Johnson & Associates there was a counter claim. There were also efforts to settle the case under the supervision of the court. And it was a slightly longer period of time. Here, frankly, the 17th docket entry in this case, including five entries for appearances, was the motion to compel arbitration. So even though it was seven months later and even though discovery had happened, the judicial involvement in this case was almost nil. Is prejudice to the other side relevant? After the court pushes into applying a state law, a contract waiver standard under the contract law of some states, including Michigan, prejudice is sometimes considered. But after Morgan, there is not sort of a freestanding federal rule that applies for prejudice. There's no rule that prejudice must be shown in order to show a waiver by conduct. But could prejudice still be relevant? I think that prejudice, as I said, I think the easiest way to say that prejudice would be relevant would be to say this is a contract principle. We apply the same contract waiver requirements as to any other contract provision. And where we would consider prejudice with regard to the waiver of a contract right in any other context, you can do so here. As I indicated, Michigan does, in fact, provide for that. Is there any evidence of prejudice? I would say no, Your Honor. I mean, the extent of what happened here is the plaintiff received all the discovery that they asked for and there was no judicial determination to essentially go back on. Did United seek discovery? United did seek discovery. Was there discovery that United obtained through a court proceeding that it could not have obtained in arbitration? We believe the answer to that is no. Both because discovery is a routine feature of arbitration now and also because under the Michigan Uniform Arbitration Act, arbitrators can, in fact, issue subpoenas. So the issue, again, to be clear, would go back to the subpoenas that's come out in the briefing. And as we've demonstrated in the briefing, we believe an arbitration could provide for the sort of discovery that happened here. Are you asking for a bright line rule? We're not asking for a bright line rule. It kind of seems like you are. So, Ray, it seems like your argument is unless you file a dispositive motion, something of that ilk, you can delay asserting your right to arbitrate for as long as you want. So it does kind of seem like you're asking for a bright line rule. No, Your Honor. I believe what we're saying. I mean, I kind of like bright line rules. I'm not sure it's consistent. So maybe that's not the worst but might be inconsistent with Johnson Associates. Well, so, Your Honor, I think that's right. I think that essentially this Court has allowed this issue to remain open for a first even period of time. And the cases have narrowed down the sorts of issues that remain open. If this Court were to affirm the District Court here, it would lower the bar further from where Johnson Associates has set it. What we've tried to... You said Johnson was a low watermark. I didn't say that in Johnson, did I? No, you... I don't think I did. I just said the totality of the circumstances here show that there's a implied waiver of arbitration just by the circumstances. And, of course, I listed the circumstances there. And your circumstances, of course, are a little bit different. But they're a lot similar, too. I mean, you listed a few things that were different, but there's not much. I question, you said you didn't know that there was an agreement to arbitrate. And I find that kind of disingenuous when you actually disclosed the arbitration document on April 2nd, 2001, and then you didn't move to compel arbitration. You didn't move to compel arbitration until August 30th, 2001. I mean, you not only had the arbitration document, you furnished it to the other side. And to say, we didn't know that we had agreed to arbitrate. Are you still arguing that? I mean, that's a little unbelievable, I think. The issue is, I think what counsel represented was, candidly, she wasn't aware of it. She had not... How could you not be aware of the document you furnished to the other side? She provided the documents to the other side. I think the implication is, is that counsel didn't read the document. Read the document. Careful. All right. So, I'm not saying... We have incompetent counsel. You weren't trial counsel, Mr. Nelson. I was not trial counsel. But we deem documents in the possession of a party to be within the knowledge of that party, don't we? I'm not going to dispute that there's constructive knowledge of what happened. The question here is, the issue is, in some cases, this Court has dealt with situations where counsel has come to the podium in the District Court, or even to this podium in this Court, to say, we waited because we wanted to see what would happen. That's not what happened here. That's what counsel was saying. Counsel said, I just overlooked it. It was a mistake. That's what counsel indicated. So that was the... So that might not be bad faith, because it's not, like, willful or malicious, but it's not excusable neglect, either. So how does that factor in? Right? Failing to read your contract to see whether you have an arbitration clause in it. Not the best. I think that in any of these cases, you're never going to have a situation where the known right part of the intentional relinquishment requirement is going to be an issue. Because it's a contract document, and the parties are always implied to it for other contracts. Right? So that's... I think it... Constant, is what you're saying. It doesn't cut one way or the other. That would be my perception. I think that where you see affirmative evidence of gamesmanship, it's a slightly different... Well, not a slightly. It's a different analysis, and the decisions have suggested that. To go back to the question of a bright-line rule, I think, as we said in our brief, we're not necessarily saying there should be a bright-line rule, but we think that there's a principle that can be deduced from the mine run of cases that's helpful for courts in terms of determining when there has and when there hasn't been an implicit or indirect evidence of a waiver. And that the further you get from that, the less likely it is that you have a waiver. In fact, I think that you see in the district court's opinion is the district court goes through the Johnson factors and says, yes, this is a little bit less, and then ultimately lands on this issue with discovery. You see that this is a relatively close case. And then turning Judge Griffin to the comments in terms of the... Can I just follow up then? So the way that you distinguish Johnson Associates, though, seems to be, whether it's a bright-line or not a bright-line, that in that case, there was a counterclaim filed. So they did something to affirmatively harness the powers of the district court. And you say that issuing subpoenas isn't affirmatively harnessing the powers of the court, which we could argue about, but does it matter the nature of the counterclaim? So was it permissive or compulsory? Because if it's a compulsory counterclaim, then it seems that you're just preserving the issue, right? You have to respond in order to not waive that issue, and we're not going to infer a waiver from that. So that would just be a constant. Does it matter? I think that it matters whether it's permissive or compulsory, and it also matters whether it's an arbitrable claim or not. If it's not an arbitrable claim, filing a counterclaim doesn't have the same imprimatur. And so how does that cash out with respect to Johnson Associates? I have to acknowledge I have not gone to look at the counterclaim in Johnson Associates to know whether it was compulsory or not. I'm happy to follow up with the court. So if it's permissive, you're saying that this case is more like Johnson. If it's compulsory, maybe you could argue Johnson's a little different. Actually, I think that it's the opposite. If it was permissive. Oh, so compulsory, you have to put it in regardless, yeah. So permissive would be, it would be more like you're seeking affirmative relief. Okay. And just if I may complete what I was saying to Judge Griffin, you didn't say in Johnson Associates that it was the low watermark. We were making that observation based on all of the other cases that were out there that it is the, that it has the least affirmative conduct. That's all we were trying to say.  You'll have your three minutes rebuttal. Any further questions?  Okay. Good morning. Good morning. Molly Savage on behalf of the appellee Jason Schwabke. I want to start with Johnson. Obviously we agree with the district court that this case is the most on point. And we agree that defendants really latch onto the filing of a counterclaim as the only really distinguishable. Do you know what kind of a counterclaim? Yeah. It was a breach of contract claim. Was it permissive then? Or? I believe it was compulsory. I don't know that the opinion itself says that. But it was cross breach of contract claims. The significance of the court asking for affirmative relief is really not reflected in the opinion. And to be clear, the defendant didn't ask the court to rule on the merits. They merely asserted the counterclaim. I think this is the correct treatment of filing a counterclaim because it's not dispositive either way. I think courts treat this like the failure to assert an affirmative defense, which makes sense because you're still at the preliminary stage of the litigation. You're intersecting with time limits set forth in the pleading rules, like the compulsory counterclaim rule. And this court... Is it your position that if the parties do anything in the litigation that they've waived the arbitration? No, absolutely not. What do they have to do? They have to substantially invoke the litigation machinery. So what does that mean? I mean, how much discovery do you have to do, or do you have to do discovery? I don't think we have to set a minimum of how much discovery a litigant has to do. I think they have completed discovery, and it's as extensive as it is in this case. Is discovery completed? Yes, discovery was completed in this case. And we, in fact, went past the original discovery cutoff. There's no more discovery left to do. Was there any discovery in this litigation that you don't think could have been obtained in an arbitration? Yes. We take the position that the 15, well I suppose there was 14 non-party subpoenas for documents that defendant issued in this case. I don't believe that under the FAA they would have been able to obtain that discovery prior to a hearing. We briefed this in our briefs here. I really don't want to belabor the point. I think we both acknowledge there's a circuit split on this issue. The Sixth Circuit hasn't weighed in, and this is probably not an appropriate vehicle to be deciding that circuit split. But regardless, obtaining discovery that's not available in arbitration is just one factor in the totality of circumstances. Actually, in this case, discovery was completed. Johnson, I think the motion was filed right before the discovery cutoff. Yeah, so in Johnson, obviously the focus in Johnson is the extent to which they participated in discovery. The huge distinguishing factor between this case and Johnson is, in Johnson, the defendants and the plaintiffs only exchanged discovery requests. They exchanged no documents. The motion to compel was filed before anybody responded to discovery. The depositions in that case, there were eight depositions noticed. They were never taken before the defendant moved to compel arbitration. Here we had eight depositions completed. Over 80,000 pages of documents were produced by the defendant. So here you have a lot more litigation going on in the district court than Johnson had.  That's my understanding, too. And Johnson, really, you look at the totality of circumstances, right?  I mean, Judge Larson loves bright light and rules. I kind of like ruling case by case and totality of circumstances, but we're in different ways there. I didn't say it was inappropriate in this case. Oh, okay. All right. On the other side of the coin with regard to counterclaims, filing a counterclaim, in Crossville, Judge Griffin, I think that's also an opinion that you authored, and it's from 2009. There, the defendant filed an answer, asserted a counterclaim, responded to two motions, and filed a motion to extend discovery. There was no waiver in that case, quote, because neither party had served any discovery requests, exchanged documents, or deposed any witnesses. So these cases are... That case seems to indicate that discovery is important. Absolutely. Yes. Okay, the other issue I wanted to address here is the reason that's been given for the delay here. There is none. There's no... Well, the excuse is they didn't know that they had agreed to arbitrate because they hadn't read the contract that they signed, and they didn't read the documents that they exchanged through discovery. So I mean, I think that is the excuse. Yeah. I don't think that amounts to any sort of colorable justification. I don't think it's excusable neglect. Does the case law have any distinction between mistake and intentional handbagging? Not that I've seen. I think there is case law that says if there is a reason, a form of excusable neglect, like Judge Larson said, as to why the right to discovery couldn't be discovered, or a reason why it couldn't be asserted in some sort of fashion. I'm thinking of one case that I can't remember the name of in which there was a change in the law. Certain claims that were arbitrable before the change of the law became arbitrable. That's an excusable delay. This isn't a situation where some filing cabinet was discovered in a storage unit somewhere. It's undisputed that they've had this arbitration agreement since the day it was signed in 2019. It's been in their possession. This is a sophisticated company. This is the largest mortgage broker in the entire country. Warner Norcross is a sophisticated law firm. UWM drafted this employment agreement. It is in all of their employment agreements, this arbitration provision for thousands of employees and has been for years. Beyond that, Deputy General Counsel for UWM participated actively in this litigation. He attended half the depositions. By his own job description on LinkedIn, his job duties include managing the company's litigation, managing outside counsel and strategy and advising the company on its employment agreement. We just don't see any justification at all as to why this couldn't have been a right that was discovered or asserted at any point before the literal end of discovery. I know that prejudice is not required. Morgan v. Sundance eliminates the idea that in order for them to waive, they must show that you are prejudiced, but I'm interested in whether in a case in which there is prejudice, that's still a relevant factor. Can you show any? Yes. I agree you don't have to show any, so I'm not saying that. I do think it is a relevant factor. We cite a case in our brief to that effect. We can show prejudice in this case. I think the biggest prejudice in this case is the absolutely enormous delay that this has infused in this case. This was a win-win for UWM. Whether they lost on this motion or won on this motion, they have gained years of delay. That harms you, I mean, presumably if you win, you'll be compensated. Correct, but if we're affirmed here. If you win, ultimately, in the trial court. How is the delay harming you? It's going to hurt us at trial. After we're done here, let's say we're affirmed here, we're going back to the district court and we have to start dispositive motion practice. Then that needs to be heard. Then that needs to be decided on. If by some miracle, we get a decision by May of this year, that's four years since plaintiff's been terminated. In the meantime, memories have faded, employees have turned over, people have left the company. It's a tremendous strategic advantage that they've received at this point. The employer is always in a position to want delay in a case. It's always better for them. They are in no rush to get any sort of resolution here. By obtaining this incredible amount of delay, they've won both ways. It's eight months, which is a substantial amount of time, but it's not four years that they were... No, I mean the delay that they've obtained in the litigation of this issue. I see, and then litigating. Their motion was filed in August of 2021. We didn't get a decision from the district court on that until May of 2023. Now they have an automatic right to an appeal, something a plaintiff does not have. Yeah, but you're the one who does... Are there proceedings? Yes. Could you have gone ahead and filed a motion for summary? No. There was a recent case just this last term in the U.S. Supreme Court that says that on these interlocutory appeals, the district court is automatically divested of jurisdiction while it's on appeal. For an issue to arbitrate, you're saying, where they're at? On a Section 16 appeal, yes. So we are stayed in the district. On everything? Yes, and have been since August of 2021. Okay. All right. Anything else? I don't have anything else. Any further questions, Judge Larson? Thank you. Three minutes rebuttal, Mr. Nelson. Thank you, Your Honors. I want to start where Sister Counsel left off. I think there was just a mistake. If you look at the docket, they did file a motion for summary judgment. The case wasn't stayed in August of 2021 when we filed this motion. The Supreme Court's decision doesn't provide for a stay while the motion for stay is pending. And the delay that happened here was not the fault after the initial filing. The delay was by the district court in waiting to decide the motion for 18 months. In terms of delay always helping employers, that also isn't true in a situation like this. The fact is that there are cases where you want to get to a resolution, so you stop spending money on legal fees and get to a resolution, and this would be that case. We don't benefit by any delay right now in terms of anything happening with regard to the case. The testimony is locked in and basically it's a three or four witness case. So this is not a case where we benefit from considerable delay, nor is there any evidence that we sought to obtain this sort of delay. We filed the motion. We didn't object to responding to summary judgment. Did the plaintiff ask for a jury trial? Yes. So the other issue that was raised was, was discovery completed? Discovery was not completed at the time that we filed the motion. The parties had agreed to an extension and there continued to be discovery at the request of the plaintiff that the defendant agreed in good faith to carry on with after the motion was filed, including several depositions that the plaintiff noticed. So there wasn't a sort of intransigence or obstruction that United Wholesale engaged in after filing this. Instead, they continued to act in good faith in the litigation, responding to various issues. They did not file a motion for summary judgment because of the fact that we had a pending motion to compel arbitration and we did not want to do anything further that would suggest waiver. You continued to litigate, to do discovery. You say that our intent all along was to go to arbitration. Well, did you impliedly waive that by continuing to litigate in district court? That's kind of like you filed your motion and you continued to litigate. Your Honor, we continued to respond to what the plaintiff was doing as a 1973 decision from this court suggests is appropriate. The only additional action that we took was a motion to extend the summary judgment deadline because of our pending motion. The court didn't rule on that and we followed the court's timelines because there was no stay in the case. Your Honor, I see my time has expired. We would ask that the district court's ruling be reversed because the affirmative discovery that happened here isn't sufficient to show a waiver of the arbitration right. Thank you. Any further questions? No. All right. Thank you, counsel. The case will be submitted.